FILED

October 31, 2018

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 2:31 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| Thomas Wayne Jacobs, | ) | Docket No.: 2017-05-0132 |
| Employee, | ) | |
| v. | ) | |
| Bridgestone Americas, | ) | State File No.: 5629-2017 |
| Employer, | ) | |
| And | ) | |
| United Steelworkers Local 1055. | ) | Judge Robert Durham |
| | ) | |

## COMPENSATION HEARING ORDER GRANTING
## MOTION FOR SUMMARY JUDGMENT

This case came before the Court on October 23, 2018, on the Motion for Summary Judgment filed by United Steelworkers Local 1055 (Local 1055).

### History of Claim

The following material facts are undisputed. Local 1055 members elected Mr. Jacobs as a Time Study Representative (TSR). However, Mr. Jacobs remained a Bridgestone employee and retained all acquired benefits, including full wages. Local 1055 did not pay any of his wages, but he worked full-time as a TSR at Local 1055's union hall located off of Bridgestone's property. Bridgestone did not directly supervise Mr. Jacobs' activities. However, he provided timesheets to Bridgestone, which had sole authority to discipline and/or terminate him.

On January 5, 2017, Mr. Jacobs suffered serious burns from an explosion. Following an expedited hearing, the Court held that he was likely to prove at trial that he suffered a compensable injury. The Court also held Bridgestone solely responsible for benefits. The Appeals Board upheld the decision.

Local 1055 filed this Motion for Summary Judgment and asserted that, as a matter of law, it was not Mr. Jacobs' employer at the time of his injury and is not liable for

1

benefits. Bridgestone responded by arguing that Local 1055 is responsible under the "loaned servant" doctrine. Mr. Jacobs did not file a response or attend the motion hearing.

## Findings of Fact and Conclusions of Law

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

When a party who does not bear the burden of proof at trial files a motion for summary judgment, it must do one of two things to prevail on its motion: (1) submit affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrate that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Tenn. Code Ann. § 20-16-101 (2018); *see also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Here, if Local 1055 is successful in meeting this burden, Bridgestone must then establish that the record contains specific facts upon which a trier of fact could base a decision in its favor. *Rye*, at 265.

Before deciding the substantive issue, the Court must address Local 1055's argument regarding the Statement of Undisputed Facts. Bridgestone objected to admissions asserting that Mr. Jacobs was not employed by Local 1055 and that the law did not require Local 1055 to have workers' compensation insurance. Local 1055 argued that Rule 56 does not permit the objection, so the Court should deem the facts admitted. The Court rejects this argument and holds that Bridgestone properly objected to and denied the assertions. Further, the Court agrees that the statements objected to remain solely issues of law.

The Court now turns to the central issue: whether Local 1055 retains any liability under workers' compensation law as Mr. Jacobs' employer at the time of injury. To answer, the Court must consider the loaned servant doctrine raised by Bridgestone.

Although Bridgestone admitted that Mr. Jacobs was its employee on January 5, 2017, that does not necessarily mean it is responsible for paying workers' compensation benefits for his injury. In *Winchester v. Seay*, 409 S.W.2d 378, 381 (Tenn. 1966), Tennessee's seminal case involving the loaned servant doctrine, the Supreme Court adopted a three-pronged test to determine if an employee is a loaned servant to make the "special employer" responsible for benefits: (1) the employee made an express or implied contract with the special employer; (2) the work performed was essentially that of the special employer; and, (3) the special employer had the right to control details of the work. The Court explained that if these conditions are satisfied as to both employers,

2

they are both liable for workers' compensation. *Id.* However, if there is clearly separate identification of work activities, the employer whose work is being done will be exclusively liable. *Id.*

The Court holds that the loaned servant doctrine is applicable to Mr. Jacobs' claim. Local 1055 had the contractual right through the collective bargaining agreement to control the details of his duties as a TSR. This right was at least equal to Bridgestone's management. In addition, Local 1055 benefitted from Mr. Jacobs' work as a TSR, since it served to protect and further its members' interests.

As Local 1055 pointed out, the first element of the test is the most tenuous, since it did not provide any monetary benefits to Mr. Jacobs for his work as a TSR. However, appellate courts have found implied contracts for hire even though there was little or no direct compensation by the special employer. *See Jackson Hous. Auth. v. Auto-Owners Ins. Co.*, 686 S.W.2d 917, 921 (Tenn. Ct. App. 1984) (compensation was in form of "training and experience"); *Fed. Ins. Co. v. Penn. Nat'l Mut. Cas.*, No. M1999-01917-WC-R3-CV, 2000 Tenn. LEXIS 449, at *6, 7 (Tenn. Workers' Comp. Panel Aug. 17, 2000) (implied contract of hire when employee volunteered to assist special employer upon general employer's request). In addition, courts have held that the test for a loaned servant "focuses less on who was to pay the employee, but instead focuses more on for whom the work was being done." *Id.* at *7.

In this case, the Court finds that Mr. Jacobs' performance of his duties as a TSR was not gratuitous on his part or Bridgestone's. Bridgestone paid him only because the collective bargaining agreement required it. Likewise, there is no evidence that Mr. Jacobs would have agreed to work full-time as a TSR without receiving compensation. Finally, as stated earlier, his services as a TSR substantially benefitted Local 1055. Thus, the Court holds that Local 1055 is a special employer under the loaned servant doctrine.

However, this does not end the analysis. The Court must also consider whether the circumstances make Local 1055 exclusively liable for any workers' compensation benefits Mr. Jacobs might be owed. In those cases where the Supreme Court found the special employer retained exclusive liability for workers' compensation, the general employer received little or no benefit from the work the employee was doing at the time of his injury. *Winchester*, at 379; *Kempkau v. Cathey*, 277 S.W.2d 392, 393 (Tenn. 1955); *Catlett v. Indem. Ins. Co.*, 813 S.W.2d 411, 415 (Tenn. 1991).

Thus, the question becomes whether Mr. Jacobs' work as a TSR was only of nominal benefit to Bridgestone to make Local 1055 exclusively liable for workers' compensation benefits. The Supreme Court squarely addressed this issue in *Jones v. Hartford Accident & Indem. Co.*, 811 S.W.2d 516 (Tenn. 1991). In *Jones*, the Court adopted the "mutual benefit" test when determining if an employee injured while engaged in union activity is entitled to workers' compensation benefits from the

employer. While acknowledging that it does not apply to all union activities, the Court generally held that an employee injured while engaged in the duties of a union official is also injured in the course of employment with his employer because the activity was of "mutual benefit" to the employer. *Id.* at 520. This position is consistent with the approach the Supreme Court took in considering the "loaned employee" doctrine with employees of temporary employment agencies who are injured while working for clients. *See Abbot v. Klote Int'l Corp.*, 1999 Tenn. App. LEXIS 199, at *10 (Tenn. Ct. App. Mar. 24, 1999).

Using the above principles, if Mr. Jacobs' injury occurred in the course of his duties as a TSR, Bridgestone and Local 1055 must be considered his co-employers subject to workers' compensation law for summary judgment purposes. So, the final question is the apportionment of liability. Normally, this is a question of fact. Here, the parties agreed that Bridgestone paid all of Mr. Jacobs' wages and benefits while he worked as a TSR. So, there are no disputes of material fact on this issue, and it is ripe for summary judgment. Tenn. R. Civ. P. 56.

Research failed to identify any cases that apportion liability in a co-employer situation where only one of the co-employers is paying benefits. Thus, although not entirely on point, the Court turns to Tennessee Code Annotated section 50-6-211(a)-(b) for guidance. The relevant part states co-employers:

> shall contribute to the payment of compensation in a proportion of their several wage liability to the employee. If one (1) or more, but not all, of the employers are subject to . . . liability for compensation under this chapter, then the liability of those who are so subject shall be to pay the proportion of the entire compensation that their portion of the wage liability bears to the wages of the employee[.]

This Court must give "plain and ordinary meaning" to words in a statute. *Yarbrough v. Protective Servs., Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *9-10 (Jan. 25, 2016). Section 50-6-211 says that when both employers are subject to liability under workers' compensation law, apportionment must be based on wages. The Court holds this approach should also apply where only one co-employer pays all of the employee's benefits. Since Mr. Jacobs only received wages from Bridgestone, it is solely liable for any workers' compensation benefits. As a matter of law, Local 1055 is not liable for workers' compensation benefits owed to Mr. Jacobs. Thus, the Court grants Local 1055's motion for summary judgment.

IT IS SO ORDERED.

4

**ENTERED October 31, 2018.**

Robert V. Durham, Judge
Court of Workers' Compensation Claims

## APPENDIX

Technical Record
1. Local 1055's Motion for Summary Judgment
2. Bridgestone's Response to Motion for Summary Judgment
3. Local 1055's Reply to Bridgestone's Response

Exhibits
1. Local 1055's Statement of Undisputed Facts
2. Bridgestone's Response to Statement of Undisputed Facts
3. Affidavit of Michael Chaney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Order for Summary Judgment was sent to the following recipients by the following methods of service on October 31, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Jim Higgins | | | X | JSH@Higginsfirm.com |
| Nick Akins | | | X | nakins@morganakins.com |
| Terry Fann | | | X | tfann@bellsouth.net |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

5